

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

FILED

SEP 1 9 2019

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

)
) Case No: 3:19 – CV- 156
Plaintiff,                                                          )
                                                                        )
Christina M. Vogt, PRO SE                                )
                                                                        ) Honorable Groh/Trumble
v                                                                       ) Complaint
                                                                        )
                                                                        )
Defendant,                                                        )
American Arbitration Association Inc.            )
_____ )

**OVERVIEW OF COMPLAINT**

On January 17, 2017, the American Arbitration Association (hereinafter AAA) opened case 01-17-0000-

0032 Vogt v Macy's Inc.  Vogt, the plaintiff[1] (or claimant during arbitration proceedings) constructively

discharged herself after months of harassment and bullying as she ended up with an anxiety and mood

disorder. She filed for arbitration in January 2017. During that time, the arbitration did not go well, and

the plaintiff was repeatedly harassed and bullied again by the respondent in arbitration.

This plaintiff entered into arbitration with the AAA in 2016. She expected that she would have a

somewhat fair and equitable legal process. What occurred was criminal, extremely biased and unfair as

per her complaint. The plaintiff was not able to request information, and her discovery was thwarted.

Facing a summary judgment promised since day one, this in itself caused this plaintiff a great deal of

_____

[1]The plaintiff in this case may also be referred to the claimant in the arbitration case. The respondent was Macys. The
defendant is the American Arbitration Association.

emotional distress.  The plaintiff could not get the names of persons to depose, she could not get meaningful answers to interrogatories, nor could she obtain the paperwork she needed to prove her claims. Her personnel file came to her in pieces at different times indicating that her file had been pilfered.  In all, she was stonewalled from pursuing her case where her psychiatrist testified she had to triple her medication due to the mistreatment she received.

Let's backtrack. An arbitrator is a consultant, acting in a quasi-judicial capacity. He or she is generally a lawyer/consultant being paid hourly. In all, he or she must remain impartial as per his or her contract signed with the AAA. When an arbitrator has clearly violated his or her contract and committed judicial and arbitral misconduct and violated the Federal Arbitration Act (FAA) (fully documented on several occasions), by denying a plaintiff the ability to get the evidence she needed to pursue her case while allowing the respondent to break its agreement with this plaintiff and uphold none of its promises in its employment and arbitration literature, something is blatantly illegal.

In essence, the respondent in the arbitration case was guilty of fraud, concealment, evidence tampering, witness tampering, perjury, obstruction and breach of contract and/or false advertising. The plaintiff in no uncertain terms repeatedly told the AAA she was going to ask the arbitrator to recuse himself, because he failed to address any of these issues or rectify any concerns about misconduct with the respondent.  In fact, this arbitrator aided the respondent in concealment and obstruction with the AAA's silence as a blessing.

 From the FAA misconduct in Section 10 Vacation, Grounds; Rehearing can be defined as "(3) Where the Arbitrators were guilty of misconduct in refusing to postpone the hearing, upon *sufficient cause shown,*

*or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.* When the arbitrator refused to allow a claimant (i.e., this plaintiff) to pursue discovery against the respondent, struck her corresponding cause of action and then would not allow claim to be mentioned in the hearing (although the plaintiff indicated she could bring testimony forward at the hearing), he was guilty of arbitrator misconduct as was AAA.

In essence, if AAA wants to enjoy the same arbitral immunity as an arbitrator, they must have to adhere to the FAA as well. Otherwise, the courts have created a double-standard favoring corporations over civil society including members of the legal profession.

Specifically, according to the FAA, when the arbitrator refused to allow a cause of action to be heard, he was guilty of arbitrator misconduct. Moreover, when he displayed egregious bias in his decisions, and his derogatory demeanor toward the plaintiff, he violated his contractual promise of fairness and neutrality to this plaintiff and concurrently violated the FAA as well as WV codes of judicial conduct. This was repeatedly pointed out to the AAA in very certain terms. There was no ambiguity. The AAA second case management team refused to intervene and recuse their "biased" consultant although he had violated his contract and "good faith" with the plaintiff.

Egregiously, the AAA never told the plaintiff not to address her concerns with the arbitrator. AAA never told the plaintiff speaking with the arbitrator and confronting him about bias was disrespectful or inappropriate. Consequently the plaintiff felt she had covered her bases as AAA had not objected to her emails stating she would have to confront the arbitrator during the final call before the hearing. (The plaintiff has emails to verify everything she has stated.) If they thought this would be rude or

inappropriate, AAA should have told this plaintiff not to address this arbitrator (Appendix A)

After the call when the arbitrator dismissing himself voluntarily, the plaintiff was the wrongly accused of confronting the arbitrator by questioning his impartiality, which can be done at the final call before the hearing. If AAA had issues with the content of this phone call, they had an obligation to say so. (See Appendix B.)

AAA was not on this final phone call to discuss the hearing for a major portion of the time. After the letter the plaintiff received from AAA stating she had been rude and disrespectful, the plaintiff asked on numerous occasions via email for examples, proof, documentation, quotes, etc., and none was ever forthcoming.

Also, please note that this letter highlights that the plaintiff (claimant) had broken the rules once six months prior to this letter whereas all other parties broke the rules and the law well after that, indicating that this plaintiff was clearly singled out for punishment while everyone else was impugn. This constitutes a one-way contract, which is illusory in nature.

The plaintiff was *maliciously* blamed. The AAA published their opinion (defamation). This unfair blaming of the plaintiff occurred after her  contract was broken, thus leaving the AAA no justifiable arbitral immunity.

The plaintiff has suffered immensely as a result of her case being unfairly closed and putting the blame on her unfairly and unjustifiably. The respondent has capitalized on AAA's defamation in its Fourth

Circuit Court of Appeals case with this plaintiff. Prima facie, this does clearly bias the view and preconceived notions of the plaintiff to the outside world perhaps especially the court system. It certainly reduces the plaintiff's credibility.

Clearly as per the FAA, the arbitrator was in violation. However, it is well noted that appealing to an appeals court about misfeasance or malfeasance often falls on deaf ears. It is almost impossible to undue an arbitral decision, and this plaintiff predicts even more so when a plaintiff lacks professional representation. That is why the plaintiff did not want to attend a closed arbitration hearing with a biased arbitrator (hourly paid contractor) guilty of not only arbitral misconduct, but judicial misconduct as well. But then, the real question arises as to, "Why should she have to?"

The Fourth Circuit has recognized that "judicial review of an arbitration award is 'among the narrowest known to the law.'" Richmond, Fredericksburg & Potomac R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992) (quoting Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 91 (1978)). Indeed, "[e]very presumption is in favor of the validity of the award." Id. (quoting Burchell v. Marsh, 58 U.S. 344, 351 (1855)). Durham Sch. Servs., L.P. v. Gen. Drivers, No. 2:14-cv-1241-DCN, at *4-5 (D.S.C. Jul. 29, 2015).

Why would a pro se plaintiff wish to challenge a corporation in an appeals court especially when she has been painted in a bad light? If we consider the case of Hurn v. Macy's, Incorporated, No. 17-3055 (7th Cir. 2018) where the arbitrator fell asleep in the hearing and woke up to hear his testimony, it seems his challenging a case in an appeals court was not successful. This appeals court did not necessarily have to review evidence, and refused to do so – their judgments were made prima facie where this plaintiff suspects that the arbitrators and corporations paying them more often succeed. However, reading between the lines, the arbitrator seemed very biased as he would not even allow Hurn basic questions

to the respondent in his case.

Without further discovery, it would be impossible to understand the business relationship between the employers who file contracts to be administrated under the AAA and by the AAA. To what extent is the AAA liable for the contract employers use under the AAA corporate umbrella and to what extent does it lead to quid pro quo as per the case against the National Arbitration Forum and the State of Minnesota? State of Minnesota by its Attorney General, Lori Swanson, Plaintiff, v. National Arbitration Forum, Inc., National Arbitration Forum, L.L.C., and Dispute Management Services, L.L.d/b/a Forthright, Defendants. Court File No. 27-CV-0918550.

The causes of action being brought against the AAA are defamation, intentional infliction of emotional distress, malice and false advertising. The causes of action occurred outside of the arbitration agreement being in place. Additionally, when AAA broke the contract unnecessarily, they also committed breach of contract, although it is questionable when the contract was breached due to all the misconduct by the AAA itself, in concert with the arbitrator and respondent.

One of the major tenets of this case it that defamation, intentional infliction of emotional distress and malice occurred before the contract was initiated or after the contract was null and void.  This plaintiff contends that when there is no contract in place, there is no immunity, which is also  other covered under the Arbitral Immunity section in this pleading. Moreover, the breach of contract is covered in that this plaintiff avers that this contract was violated by all parties but the dismissal was punitive and arbitrary violating several aspects of a valid contract.

Finally, so this court understands the severity of how badly the arbitration process has been, in a new report by the American Association for Justice, they state your chances of being struck by lightning are better than winning in arbitration. In this report, the questionable business practices[2] of the AAA are mentioned several times. Although this plaintiff was not forced into arbitration, she was duped into it via False Advertising.

## JURISDICTION

This court has jurisdiction as the case is worth more than $75.000. Similar cases have settled for much more.

Nothing in the subject matter deters this case from being heard in the United States District Court for the Northern District of West Virginia.

There exists diversity in this case as AAA is a citizen of New York, and the plaintiff is a citizen of

---

[2]This report was released this month. For a full copy see http://facesofforcedarbitration.com/report/ utm_source=Informz&utm_medium=Email&utm_campaign=PA%202019%209%20Forced%20Arb%20Report&ut m_term=PA%202019%209%20Forced%20Arb%20Report .

"Forced arbitration is a rigged system designed by corporations in which injured workers and consumers have no meaningful chance of finding justice. Forced arbitration requires Americans to "agree" to surrender fundamental constitutional rights – often without ever realizing they've done so. When corporations harm workers and consumers by cheating, stealing, or even breaking the law, cases that should be heard by a judge or jury are instead funneled into a secret system controlled by the wrongdoers in which there is no right to go to court, no right to a jury, no right to a written record, no right to discovery, no transparency, no legal precedents to follow, no opportunity for group actions when it would be too difficult or costly to file a claim alone, no guarantee of an adjudicator with legal expertise, and no meaningful judicial review. Without such checks and balances, the deck is stacked heavily against workers, patients, and consumers, and systemic misconduct is allowed to continue in secret.

Forced arbitration's proponents counter that the process is faster, fairer, and better for workers and consumers than going to court. However, this comprehensive analysis of the self-reported data provided by the arbitration organizations makes clear that forced arbitration is not an alternative judicial process, but instead eliminates claims, immunizes corporations, and allows abuse, discrimination, fraud, and essentially all other corporate wrongdoing to go unchecked. Americans are more likely to be struck by lightning than they are to win a monetary award in forced arbitration."

West Virginia.

Moreover, the statute of limitations is preserved in this case by allowing ten more days to the statute of limitations as per the voluntary dismissal of case 3;19 CV-130.  More importantly this statute is preserved by the date of discovery which began in November of 2018 when the plaintiff began to seek legal counsel. Other claims were discovered just recently in March of 2018 and July of 2018.

## CAUSES OF ACTION

### Cause of Action One: Defamation

To prove prima facie defamation, a plaintiff must show four things: 1) a false statement purporting to be fact; 2) publication or communication of that statement to a third person; 3) fault amounting to at least negligence; and 4) damages, or some harm caused to the person or entity who is the subject of the statement.

In this case, the AAA knew that making a statement against her would be used in any further court cases, thus making it more difficult for her to prevail. It was unnecessary to publish this to the respondent because it awards them unfair advantage in the court system. Even if this is opinion which damaged the plaintiff, this is defamation. No doubt that the plaintiff was harmed by this claim of being rude and disrespectful to the arbitrator. It was intentional to blame the plaintiff and put her in a bad light considering the following:

*CASE MANAGEMENT TEAM 2 AND AAA EMPLOYEES:*

1. Offered legal advice (faulty) to the claimant (plaintiff);

2. Did not recuse a biased arbitrator guilty of arbitrator misconduct;

3. Administratively dismissed this case because they were "frustrated" the claimant wanted the same consideration as the other parties;

4. Defamed and intentionally maligned the claimant causing her more undue emotional distress;

5. Allowed the respondent to break the rules and the law;

6. Allowed the arbitrator to commit judicial and arbitral misconduct;

7. Did not properly monitor the last call with the respondent, the arbitrator and the claimant;

8. Never informed the claimant she was breaking the rules when she spoke to the Assistant to the President until after the fact;

9. Non-performed on a contract with the claimant;

10. Refused to supply a rationale to the claimant for breach of contract or any other decision they made in a vacuum; in other words, these non-lawyer case managers could make legal decisions for the claimant (acting as her own lawyer) without explaining who made a decision or what the rationale or legal basis was for the decision; this defies any standard sort of legal process – including for lawyers or judges who must provide legal arguments for their decisions;

11. Did not allow the claimant to review the arbitrator's previous arbitration case decisions although the rules were modified to be able to do so;

12. Allowed the arbitrator and the respondent and themselves to breach their contracts and "good faith" with the plaintiff;

13. Had their counsel misrepresent the claimant as "rude and disrespectful" which are opinionated and invalid claims. She made the case managers "frustrated" because she wanted to desperately recuse a biased arbitrator;


***ARBITRATOR:***

1. Kept the claimant from gathering necessary information in her case, and then refused to let her bring it forward at the hearing – (arbitral misconduct);

2. Struck a cause of action for which the arbitrator would not let the claimant gather information (arbitral misconduct);

3. Was rude and disrespectful including raging at the claimant (judicial misconduct);

4. Allowed Macy's to defy orders without any punitive actions or reprimands (bias);

5. Did almost exclusively what the respondent wanted – the respondent would state  what should happen next and the arbitrator would do that in almost all cases – (bias);

6. Held a phone call without AAA on the phone and demanded we continue despite the claimant's objections – said he does this all the time (broke the rules);

8. Likely unfairly complained to the AAA when he recused himself so as to retaliate against the claimant (judicial misconduct);

10. Violated his contract with all parties by committing bias  and violating "good faith" provisions

**RESPONDENT:**

1. Ignored the arbitrators' orders and requests;

2. Lied to the claimant and the arbitrator on several occasions;

4. Induced a witnesses to lie, induced others to  falsify affidavits, and conceal information;

6. Would not give the claimant information on a timely basis, if at all, as per the Macy's Plan Document; (See Appendix E)[3];

7. Refused to identify key personnel to whom the claimant described in enough detail to identify;

---

[3]It is unknown whether this is a contract or simply an advertising document as per Macy's employment handbook disclaimer. This needs discovery to determine. Also, if this is used in AAA, to what extent does this constitute an illusory contract where Macy's did not follow this document as promised but took liberty with it on several occasions during discovery. See pages

8. Would not allow the claimant to contact the respondent's personnel for deposition or affidavit unless they went through the respondent where respondent refused to respond to requests for over one year and then partially complied;

9. Was allowed to tell the claimant what she would and would not do regardless of the respondent's Plan Document or AAA rules with arbitrator buy-in;

10. Broke confidentiality by telling the arbitrator that the claimant had filed a motion for recusal but the respondent wanted to keep him thus putting the claimant in a very weak position;

11. Would at times email the claimant with no other purpose but to seemingly harass her knowing full well she was already suffering from mental health issues;

12. Knowingly breached the plaintiff's confidentiality in the final call with the arbitrator;


***PRO SE PLAINTIFF (CLAIMANT IN THE ARBITRATION CASE):***

1. Spoke to the Assistant to the President on one occasion for about 20 minutes – no one ever told the claimant that what she was doing was wrong until after the fact; at that time, the claimant did not believe her case management team until she spoke to the VP of their unit and understood she was not to go outside their unit for help – at any time no matter the circumstances; (uninformed by AAA's upper management);

2. Was given the wrong name of a person higher up in the Pro Se Organization, so the wrong person was copied on complaints until that person emailed and said she was not the right person to email – she gave the claimant the correct name and the claimant corrected her email list (not her fault);

3. Repeatedly told her team she was extremely fearful about this arbitrator as he was incredibly biased and guilty of judicial and arbitral misconduct (not wrong);

4. Told this case management team she did not want to go to arbitration with this arbitrator – regardless,

she was forced into this arbitration – the claimant then told the team she would ask his recusal at this phone conversation – they did not object to her saying this to him along with the fact that this claimant had told them she benignly reported him to the PA State Bar (nothing wrong here – claimant had this right);

6. Remained the only person to follow the rules except for the contact outside her case management team; however as stated, she did this unintentionally as the AAA senior management spoke to this plaintiff for 20 minutes, If this was wrong, AAA had an obligation to say so. She also contacted who she was told was the senior VP of the plaintiff's team although the she was given the wrong information and email by AAA personnel in Boston;

7. Was the only person on the phone call to question why the respondent, the arbitrator and the she should be talking without AAA on the call; (not wrong);

8. Asked the arbitrator to recuse himself as indicated after he refused for a third time to let information come forward at the hearing, and he declined. She asked the arbitrator if he had considered recusal. The plaintiff did not break the rules by disrespecting the arbitrator, yelling, screaming, name-calling or inaccurately criticizing the arbitrator. She did say he seemed "biased" and gave numerous reasons and examples to highlight that he was extremely biased. According to AAA rules, this was OK to do and the AAA team never told the plaintiff to mention this during the call. (See Appendix D);

9. Told the AAA representative on the call that she told the arbitrator what she would tell him and asked the AAA person to listen to her complaints – the arbitrator left the call within about one minute, and the claimant spoke directly to the case manager. She had no time to be rude or disrespectful to the arbitrator; *moreover she did not break the rules intentionally as other parties did;*

10. After five days when the arbitrator recused himself, the claimant was blamed for the case being administratively closed. This was published to the respondent, who has used it against the claimant in

court proceedings. This has caused this plaintiff serious emotional distress as she was already suffering

from Major Depression due to this horrible abuse at Macy's coupled with the horrible abuse suffered

during arbitration;

> A statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977); *see also* syl. pt. 1, *Sprouse v. Clay Communications, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975), *cert. denied*, 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107, *reh. denied*, 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (statements are defamatory if they tend to "reflect shame, contumely, and disgrace upon [the plaintiff]"). Direct defamatory statements are not an absolute prerequisite to recovery, however, because defamation may also be accomplished through inference, implication, innuendo or insinuation. *See State v. Aler*, 39 W. Va. 549, 20 S.E. 585 (1894); *Johnson v. Brown*, 13 W. Va. 71 (1878); *see also Neal v. Huntington Pub. Co.*, 159 W. Va. 556, 223 S.E.2d 792, 796 (1976). In determining whether a particular defendant is liable to a private individual for defamation, in the absence of a privileged communication, the standard is one of negligence, and the conduct of the defendant is to be measured against what a reasonably prudent person would have done under the same or similar circumstances. *See Havalunch, Inc. v. Mazza, supra; see also* Restatement (Second) of Torts § 283 (1977). *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 706 (W. Va. 1984).

In conclusion it is not difficult to infer that this statement made by AAA after the plaintiff's case was

closed, was defamatory and had enormous potential to harm her in future legal proceedings. A prudent

person would not have singled out the plaintiff unfairly, but offered a more professional and balanced

representation of the facts.

The plaintiff argues that her contract with the AAA was null breached numerous times before the

defamation occurred. It was damaging to the plaintiff as this statement was used against her appeal in

the Fourth Circuit when all the plaintiff did was to hold an arbitrator who broke the law to legal

standards as prescribed by the law. The AAA was forewarned of this conversation, and they never told

the plaintiff not to speak with the arbitrator about her concerns.

This renders their claims of disrespectful and rude even more egregious in that the plaintiff was defamed for doing what was within her legal rights. AAA has been, to date, unable to offer any evidence to support this claim or "rude" and "disrespectful" although it was solicited by the claimant on several occasions.

The plaintiff is also aware that she did not raise her voice, did not name-call, yell or any other sort of banned behavior. However, being a woman who asserted herself, she may have been more harshly judged than if she were a man as this is commonplace when women assert themselves.[4]

### Cause of Action Two: Intentional Infliction of Emotional Distress (IIED)

As stated, the second arbitrator did not allow the plaintiff to pursue any further discovery. He struck her from being able to use her last remaining interrogatories under Macy's contract as well as retrieve any outstanding information. Also, he struck all of the plaintiff's Motions to Compel any new or past evidence. AAA stood by and did nothing although the plaintiff made it clear to her AAA case managers and AAA senior management that this was damaging to her case success. This violated Macy's Plan[5] document which was filed for use in the AAA proceedings.

The claimant actually documented the arbitrator's biased decisions in a chart, emails, and letters to the AAA and the respondent as well as other pertinent documents highlighting that the claimant felt she was being treated unfairly. The information presented was objective and unambigious.

---

[4] The literature is rife with articles about gender bias in business communication. "One study from Carnegie Mellon and Harvard gave participants descriptions of men and women with equivalent qualifications who had applied for a fictitious job. When told that some candidates had tried to negotiate for a higher salary, the study participants — whether men or women — found fault at twice the rate with the women who negotiated than with the men who negotiated."  Retrieved from https://www.nytimes.com/2010/03/07/jobs/07preoccupations.html

[5]Supra Note

After this case was administratively dismissed, another lawyer, Susan Thompson, subsequently told the claimant/plaintiff she could not believe, "the bias she suffered." Four other lawyers agreed with this statement of bias. It was documented unambiguously to AAA.

While the case management team could have given other reasons for dismissing this case, they *intentionally and maliciously* targeted this pro se plaintiff – they did not ever sanction this arbitrator, the respondent or themselves for breaking the rules and breaking the law; they intentionally and unjustly and penalized the one person who had been the most compliant in this arbitration procedure. The double-standards in this decision are unconscionable because it points to arbitrariness of AAA's contract dismissal.

Now, the plaintiff is a senior citizen who is diagnosed with Major Depression – and it is severe Major Depression resulting from her original case with the respondent where her diagnosis has worsened over time as per a deposition from her psychiatrist. She has not gone to see the doctor a couple of times; she has been on medication and in treatment for more than three years.

This plaintiff is certainly not malingering as she is health conscious. The plaintiff now takes medication with a side effect of breast cancer and at her age, that is disconcerting. However, she must take it or face inability to function. The plaintiff could apply for disability, but she enjoys her teaching and her activism as it helps her cope with her depression.

Unfortunately, many courts do not understand how to compensate for or exactly what mental illness

implies. It does not mean the plaintiff is mentally deficient (although memory can be an issue from time to time), but there are other extenuating circumstances which make one's life much more difficult. We often see persons in the media with mental illness performing great works, and people in everyday life doing their daily tasks.

Claiming that she may have simply seen a doctor a few times is unduly derogatory and abusive. So any attacks on the plaintiff's mental health should be struck, and her complaints should be taken very seriously. It took her over one month to deal with her case being unfairly and maliciously administratively closed in that she could not even deal with seeking counsel. When a person is already challenged with anxiety and depression, another blow strikes deeper than it would for a normal person.

AAA closed this case administratively in retaliation of the arbitrator recusing himself, and AAA did it to intentionally harm this plaintiff knowing full well she was suffering from Major Depression and anxiety, which was extremely likely to worsen this plaintiff's condition. The plaintiff exhibited many of the systems of post traumatic stress disorder as stated under oath by her psychiatrist. When the AAA laid this case closure on her unnecessarily and unprofessionally, the plaintiff was emotionally and psychologically damaged even further.

The AAA committed this egregious defamatory act with full knowledge that the plaintiff was not represented by counsel and represented the weakest link – otherwise, it would have been closed stating something to the effect that, "Due to all parties' errors, this case cannot be administrated further by us." However, given the numerous cases citing quid pro quo between relationships between arbitration agencies, arbitrators and corporations, this followed the well-documented pattern of abuse targeted at

the unrepresented claimant.

As a note, the first case management team recused the first arbitrator of its own volition. They do not interact with the second team to the best of this plaintiff's knowledge. Therefore, when the second team said they were "frustrated" because they already recused an arbitrator, they were not representing the truth. This statement alone indicated that the plaintiff was punished for standing up for herself in this arbitration case.

Case managers should be equipped to recuse a bad arbitrator and doing so would make arbitration a better alternative than it is currently. Moreover, because the AAA and organizations like them have been able to hide behind "total arbitral immunity;" they believe they are immune to any misdeed or infraction; they can do what they want when they want; this is wrong! It was the plaintiff's legal right to ask for this biased arbitrator's recusal. The Supreme Court upheld recusal for bias in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)).[6]

Absolutely this would cause a seriously impaired claimant more emotional distress; this was done intentionally to scapegoat the plaintiff by the AAA to thwart further legal proceedings. Thus the cause of Intentional Infliction of Emotional Distress ("tort of outrage") must stay.

### Cause of Action Three: Malice

---

[6] It was found that there is an obligation to recuse a biased judge under bias and lack of partiality. Caperton had a judge recused who had a conflict of interest in his case. Moreover, while there is immunity in the choice of an arbitrator nothing says that if the AAA fails to recuse a biased and unethical arbitrator, they are immune.

Considering all that had occurred in this case, the actions of the AAA clearly refusing to administer the case and blaming the plaintiff represents malice. This plaintiff was singled and and unfairly blamed because she exercised her rights and refused to go to arbitration with an arbitrator who was in violation of his contract with the AAA and also in violation of the FAA. Blaming her because a "team" of questionable professionals was "frustrated" shows clear, direct and intentional malice aimed directly at the plaintiff.

> In civil malicious prosecution actions, the issues of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds. Truman, *Id*. 146 W. Va. at 723-24, 123 S.E.2d at 70. *Morton v. Chesapeake and Ohio Ry. Co.*, 184 W. Va. 64, 67 (W. Va. 1990).

Given all the previous arguments, it would easy to infer that this plaintiff was intentionally and maliciously harmed by AAA's actions throughout the case and then after the contract was void due to breach-failure.

### Cause of Action Four: Consumer Fraud – False Advertising

"Consumer fraud is commonly defined as deceptive business practices that cause consumers to suffer financial or other losses. The victims believe they are participating in a legal and valid business transaction when they are actually being defrauded."[7]

As the plaintiff is a consumer with ascertainable loss, she is entitled to equitable relief Federal Uniform Deceptive Trade Practices Act (UDTPA) which declares that "any other conduct which similarly creates

---

[7]Definition of consumer fraud retrieved from https://www.winston.com/en/legal-glossary/consumer-fraud.html

a likelihood of confusion or of misunderstanding" is actionable under the Uniform Act.[8]  The MN State

Attorney General's case against the National Arbitration Forum, State Attorney General relied upon the

MN state's version of the UDPTA.[9]  The State Attorney General succeeded in her claim using the statutes

of fraud.

The plaintiff also cites the WV UDTPA statute. West Virginia's §46A-6-104 also protects the consumer

from "Unlawful acts or practices and states that, *"Unfair methods of competition and unfair or deceptive*

*acts or practices in the conduct of any trade or commerce are hereby declared unlawful,"*[10] and defines

consumer protections according to these guidelines.

The cause of action for consumer fraud encompassing false advertising was initiated at the time when

the plaintiff chose arbitration when reading AAA's advertisement literature. Because the plaintiff had a

choice when choosing a system for employment complaints, she chose arbitration based upon Macy's

program for arbitration and the American Arbitration Association's advertising literature. This AAA

literature falsely advertises neutral arbitrators, and while aware the arbitrator was not neutral, AAA

---

[8]  Comm'rs On Unif. State Laws, Handbook Of The National Conference Of Commissioners On Uniform State Laws And Proceedings Of The Annual Conference Meeting In Its Seventy-third Year, 253 (1964). Also, This important provision, like the general terms of §5 of the Federal Trade Commission Act, constitutes legislative recognition that the determination of what is actionable deceptive conduct should ultimately depend upon "the gradual process of judicial inclusion and exclusion."

[9] UDTPAs have lower standards of proof, and they eliminate the intent to deceive requirement. *See Hangman Ridge Training Stables v. Safeco Title Ins.*, 105 Wash.2d 778 (1986). They also do not necessarily require proof of reliance. Moreover, the representation does not have to be literally false; all that has to be shown is that the representation was likely to deceive, or even that it just has the capacity or tendency to deceive. *Id.* UDTPAs expand liability to include unfair conduct. An award of multiple damages is usually predicated upon a showing that the defendant's unfair or deceptive conduct was willful or knowing. Such awards of multiple or punitive damages are for the purpose of prompting settlement in particular cases, encouraging injured parties to file suit, and deterring business fraud. *See Kenai Chrysler Center v. Denison*, 167 P. 3d 1240, 1260 (Alaska 2007).

[10]  West Virginia's §46A-6-104 Retrieved from  https://www.lawserver.com/law/state/west-virginia/wv/code/west_virginia_code_46a-6-104

refused to recuse and tried to force the plaintiff into a closed hearing with a very biased arbitrator although they state in their AAA Employment Rules, they are obliged to do so. (See Appendix C.)

Using the rationale of the False Advertising occurring outside the arbitral process[11] the plaintiff contends that she should have the same rights to bring forward the False Advertising because she is not challenging the material facts of arbitral immunity. The plaintiff is arguing that she was duped into entering an agreement that she never would have entered into had she known what would happen.

Further. plaintiff avers that False Advertising is not an arbitral function. The plaintiff was duped into choosing arbitration when her employer offered her the choice of arbitration or the court system. Not knowing much about arbitration, she read the Macy's document and AAA literature, and felt that arbitration would be acceptable as she did not anticipate anything going awry during her employment.

It is a well-known fact that burdens of a lawsuit declare that each party has a right to discovery – when an arbitrator denies discovery to one party and then strikes her claim for lack of evidence, he or she has denied one party due process. When the AAA advertises its due process protocol and employment

---

[11] DOUGLAS HOPPER V. AMERICAN ARBITRATION ASSN., No. 16-55573 (9th Cir. 2017). Arbitral immunity extends to claims that arise out of a decisional act and exists to "protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011) (citation omitted). But Hopper's false advertising claim is predicated on AAA's descriptions of its arbitrators disseminated through its website and direct mail. Commercial advertisement, designed to sway individuals to choose AAA over its competitors—as Hopper alleges occurred here—is distinct and distant from the decisional act of an arbitrator. Therefore, adjudication of claims, like false advertising, that arise before a formal arbitration relationship between parties to arbitration, arbitrators, and arbitration companies like AAA will not lead to "undue influence" over the arbitration process, nor will it expose arbitrators' decisions to "reprisals by dissatisfied litigants." The AAA could ensure non-biased arbitrators through better training of its personnel. They could also put a  lawyer in every case management team to further ensure due process. This case is not cited directly as it is an unpublished case in the Ninth Circuit Court of Appeals. The plaintiff is merely using this argument as rationale for her claim, not particularly citing this case.

handbook and has no intention of being held accountable to them, it constitutes consumer fraud and false advertising. It is simply meaningless paper with promises that never have to be fulfilled.  And sadly, this is the false advertising paperwork that was used to dupe this claimant into arbitration.

Another way to sue the AAA for misconduct including fraud, is under the FAA.  In the Fourth Circuit Court of Appeals case, Gryder v. HCL Am. Inc., Civil Action No. 1:17-cv-1258, at *6 (E.D. Va. Aug. 30, 2018), it stated the following:

> Plaintiff's assertions against Defendant would be more appropriately challenged under the Federal Arbitration Act (9 U.S.C. § 10). While the Plaintiff references the Federal Arbitration Act in his complaint, he fails to assert a claim under the Act or list facts supporting a plausible cause of action under the Act. Plaintiff failed to plead facts sufficient to state a prima facie claim of breach of contract, fraud, or collusion against the AAA in his complaint. Because this Court finds that the AAA is protected by arbitrator immunity, the Plaintiff's complaint fails to state a plausible claim for relief and the AAA must be dismissed as a Defendant in the instant case.

This plaintiff contends that AAA was party to the violation of FAA rules, a governing principle for which they are beholden. In order to exist as an arbitration organization, the American Arbitration Association must follow these mandates, not become a party to violating them. However, by refusing to hold an arbitrator accountable after several unambiguous complaints citing bias, obstruction and other breaches of judicial codes of conduct, they were compelled to administratively discharge this sub-contracting arbitrator as per their advertising literature under Appendix C.[12]

---

[12] "The purpose of the Federal Arbitration Act, 9 U.S.C. § 2, is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms." Syllabus Point 7, *Brown v. Genesis Healthcare Corp.,* 228 W.Va. 646, 724 S.E.2d 250 (2011). *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 551 (W. Va. 2012)

Forcing a plaintiff to go to a closed hearing with a contractor who has broken the law on behalf of the respondent is unconscionable and constitutes fraud. "The FAA provides that a Court may set aside an arbitration award "procured by corruption, fraud, or undue means" or for "evident partiality in the arbitrators." 9 U.S.C. § 10(a).

The FAA also contains another clause which speaks to non-performance on a contract or breaching a contract. Secondly under the FAA Section 10 number (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  This reflects this plaintiff's case. Her case was so horribly executed that she could not go to a hearing with a man of whom she was terrified. But then given his misconduct, why should she have to go to a closed hearing with an hourly paid contractor who broke his contract with AAA, and his promise of neutrality to the plaintiff?[13]

---

[13]. Although this case cited is another state, this plaintiff is borrowing the argument as it duly applies to her case. If an arbitrator is not immune, neither is the AAA.  Based on this analysis, the court concluded that, while a judge is immune from liability for failing to render a decision (see *Baar, supra,* 140 Cal.App.3d at p. 983, discussing *Watt v. Arnot* (1907) 7 Cal.App. 221 [ 94 P. 86]), an arbitrator should not be immune for failing to issue an award (see *Baar, supra,* 140 Cal.App.3d at pp. 983-986). As the court put it, "arbitration is contractual in nature and [the] breach of an arbitration contract will result in a cause of action to the damaged party." ( *Id.* at p. 985.) Indeed, the court went so far as to suggest that corruption on the part of an arbitrator might give rise to liability for breach of the covenant of good faith and fair dealing inherent in the contract between the arbitrator and the parties. ( *Ibid.*). According to the court, "[w]hile we must protect an arbitrator acting in a quasi-judicial capacity, we must also uphold the contractual obligations of an arbitrator to the parties involved." ( *Ibid.,* italics omitted.)

Finally, the court in *Baar* reasoned that, because the arbitrator was not immune from suit, the AAA did not derive any immunity from him. ( *Baar, supra,* 140 Cal.App.3d at p. 986.) In addition, the court stated that the liability of the AAA was justifiable because it was based on the association's improper administration of the arbitration proceedings, as opposed to the AAA's performance of a discretionary act or its involvement in the decision-making process, for example, in deciding whether the arbitrator had a conflict of interest or should be disqualified. ( *Id.* at pp. 986-987.) *Stasz v. Schwab,* 121 Cal. App. 4th 420, 435-36 (Cal. Ct. App. 2004)

Another aspect of fraud not mentioned was Macy's Plan Document[14] which stated that they could amend the document to apply the law. This creates issue of an illusory agreement. Moreover, when the AAA was able to arbitrarily determine when to break a contract, not at the first breach, then it is also illusory.

Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract. *See Douglas v. Johnson Real Estate Investors, LLC,* 470 Fed.Appx. 823, 825 (11th Cir.2012). ("Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid."); *Morrison v. Amway Corp.,*517 F.3d 248, 257–58 (5th Cir.2008) (finding arbitration agreement illusory and unenforceable where defendant held unilateral authority to amend or eliminate the arbitration program); *Dumais v. Am. Golf Corp.,*299 F.3d 1216, 1219 (10th Cir.2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Penn v. Ryan's Family Steak Houses, Inc.,*269 F.3d 753, 759–61 (7th Cir.2001) (denying motion to compel arbitration where agreement was illusory because one party had "sole, unilateral discretion to modify or amend"); *Floss v. Ryan's Family Steak Houses, Inc.,*211 F.3d 306, 315–316 (6th Cir.2000) (arbitration agreement was "fatally indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures without any obligation to notify, much less receive consent from," other parties); *Hooters of Am., Inc. v. Phillips,*173 F.3d 933, 939 (4th Cir.1999) (holding that employer's ability to modify rules "in whole or in part" without notice to employee renders arbitration agreement illusory); *Grosvenor v. Qwest Corp.,*854 F.Supp.2d 1021, 1034 (D.Colo.2012) ("Because Qwest reserved an unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and unenforceable."); *Harris v. Blockbuster, Inc.,*622 F.Supp.2d 396, 398–99 (N.D.Tex.2009) (arbitration clause in internet video purchase agreement illusory because defendant reserved the right to alter the terms of the agreement at any time by giving notice to the consumer); *Snow v. BE & K Constr. Co.,*126 F.Supp.2d 5, 14–15 (D.Me.2001) (holding arbitration agreement illusory and unenforceable because employer "reserve[d] the right to modify or discontinue [the arbitration] program at any time"); *Trumbull v. Century Mktg. Corp.,*12 F.Supp.2d 683, 686 (N.D.Ohio 1998) (finding no binding arbitration agreement where "the plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced."). *In re Zappos.com, Inc., Customer Data Sec. Beach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012).

---

[14]See Appendix E, pages 8, 10, 11, 12, 15, 18,

In this case, it was clear that while the plaintiff had to strictly adhere to the rules, laws and contract – nobody else was compelled to do the same rendering the contract with AAA void.

*In Olson v. National Security Dealers,* all actions which are *"integrally related to arbitration" are immune."* It is here that the courts have consistently failed. They have not often scrutinized cases for actions which constitute arbitral functions and those which do not.  False advertising and consumer fraud are not an integral part of arbitration as are the other causes of action in this suit. Civil libaility occurred the moment this plaintiff read the all AAA and Macy's corresponding arbitration literature and was duped into arbitration.

### Cause of Action Five: Breach of Contract

Fundamental breaches of contract end up in court. A material breach-failure to perform one's duties as set in the contract is considered serious, and allows the injured business or individual to seek damages in court. When AAA refused to uphold its promise of a neutral arbitrator and neutral case managers, it refused to do its part.

When AAA knowingly allowed an arbitrator and respondent to break their contract with the AAA and the plaintiff by rule and law-breaking, it prevented this plaintiff from prevailing in her case. To be legally significant, a breach has to be considered serious, or "material." In this case, a case with merit could not get to a hearing because of AAA's illegal and fraudulent business practices.

That constitutes a serious breach. When the arbitrator materially breached his contract of faintness and

neutrality, the plaintiff considered the contract to be terminated.

AAA contracts have often been considered one-way, because AAA cannot be held accountable to their

improper actions or blunders, yet this plaintiff could be.

Nonetheless, mutuality does require that each party exchange a "binding obligation," not simply an "illusory promise" that "'appears to be a promise, but ... does not actually bind or obligate the promisor to anything.'" Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005) (quoting Cheek v. United Healthcare of Mid-Atl., Inc., 835 A.2d 656, 662 (Md. 2003)). "Where a party reserves the right to 'alter, amend, modify or revoke' an arbitration agreement, the promise to arbitrate is illusory and the arbitration agreement is unenforceable for lack of consideration." Caire, 982 F. Supp. 2d at 593-94 (quoting Cheek, 835 A.2d at 662, 669). "Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration." Hill, 412 F.3d at 543. Owen v. Cbre, Inc., Case No.: PWG-16-773, at *7 (D. Md. Dec. 2, 2016).
An arbitration agreement only "is enforceable if it is a valid contract." Caire v. Conifer Value Based Care, LLC, 982 F. Supp. 2d 582, 591 (D. Md. 2013) (citing Hill v. PeopleSoft USA, Inc., 412 F.3d 540 (4th Cir. 2005)). Further, "'the presumption in favor of arbitration does not apply to questions of an arbitration provision's validity, rather than its scope.'" Id. at 593 (quoting Noohi v. Toll Brothers, Inc., 708 F.3d 599, 611 n.6 (4th Cir. 2013)). "Courts apply 'ordinary state-law principles that govern the formation of contracts when assessing whether the parties agreed to arbitrate a matter.'" Galloway v. Santander Consumer USA, Inc., No. CCB-13-3240, 2014 WL 4384641, at *2 (D. Md. Sept. 3, 2014) (quoting Noohi, 708 F.3d at 607 (internal quotation marks and citations omitted)). Additionally, "'generally applicable contract defenses, such as fraud, duress, [and] unconscionability, may be applied to invalidate' the arbitration policy." Mould v. NJG Food Serv. Inc., 986 F. Supp. 2d 674, 678 (D. Md. 2013) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Owen insists that the Arbitration Provision is not a valid contract and, in any event, is unconscionable. Pl.'s Opp'n 4, 8. Owen v. Cbre, Inc., Case No.: PWG-16-773, at *4-5 (D. Md. Dec. 2, 2016).

It is here that discovery is necessary as the business and contractual relationship between the

respondent in arbitration (Macys) had with the AAA. The contract between the two parties where the

above-mentioned respondent was allowed to arbitrate with its contract under the AAA umbrella. The

Macy's contract was rarely upheld by Macys and what the liability or the obligations of AAA to do so are

not transparent. It is also unsure if this Macy's contract was a contract or an advertising document due

to the employee handbook disclaimer – this is in need of discovery. Clearly, if the AAA had a contract

with Macy's and the contract is unenforceable, then AAA is liable for fraud.

The plaintiff also mentions non-performance because under the FAA, an arbitrator can be held accountable for equitable relief for both misconduct and non-performance. Because the AAA wants the same consideration as an arbitrator, they must be held to the same legal guidelines for relief when they fail and become part of the non-performance and misconduct. If we can use both the terms arbitrator meaning also arbitration agency, then they are equally responsible for equitable relief as per the FAA.

Also, other considerations include when the contract with AAA was null and void. Was it when the arbitrator broke his contract with AAA to be an unbiased arbitrator? Was it when AAA broke the rules and allowed Macy's to break the law? Was it when the plaintiff spoke to the assistant to the president and they were both rule-breakers? Is AAA's contract even valid in the first place? It is here we will momentarily review WV State contract laws for further clarification for this court.

Because the plaintiff was duped into believing that all parties had to adhere to the same standards and the rules were universal for all, she claims unwariness as per the following:

> *Board of Ed. v. W. Harley Miller, Inc.*, 160 W. Va. 473 (W. Va. 1977) provides "It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was u*nconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract    was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the cour*t to determine by reference to the entire    contract,   the   nature of the contracting parties, and the nature of the undertakings covered by the contract."

Again, we  have false representations as per the AAA literature and the Macy's Plan Document.

> *"230 W. Va. 678; "Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action*

*for damages.* It is not indispensable to a recovery that the defendant actually knew them to be false. Syl. pt. 1, *Horton v. Tyree, 104 W. Va 238, 139 S.E. 737 (1927)."*

When the AAA knew their contract with the plaintiff excuses them for mistakes or errors, the same was not true for the plaintiff when she inadvertently broke the rule of speaking to another individual within AAA who never told the plaintiff she was breaking the rules. Moreover, AAA, Macys and the arbitrator had no responsibility to uphold their bargains making this a one-way contract which was unenforceable.

*Mountain State Coll. v. Holsinger 742 S.E.2d 94 (W. Va. 2013)* The Court may declare any agreement unconscionable and unenforceable, "if the court as a matter of law finds: (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct,  or (b) Any ... part of the agreement to have been unconscionable at the time it was made." W.Va.Code §    46A–2–121(1)."

From the contract laws cited in the State of West Virginia, it is clear that the AAA was not in compliance with even the most basic tenets of WV contract laws. Thus, AAA breached its contract which under further scrutiny in discovery, may be an illegal document as was the Macy's Plan used with the AAA.

## V. ARBITRAL IMMUNITY

"Arbitral immunity refers to the immunity that is extended to an arbitrator for acts arising out of the scope of their arbitral functions. ... Arbitral immunity is the keystone of the arbitration system and should not be overturned. Arbitral immunity is necessary for finality of arbitrators' decisions."[15]

However, it is here that we must discuss the wording of this law. The AAA does not act in a judicial or

---

[15]This is a standard definition commonly used. Retrieved from https://definitions.uslegal.com/a/arbitral-immunity/

quasi-judicial capacity. They failed in case administration. *If AAA makes no awards, is not part of the decision making for an award and is not present at the hearing, how is it they should be covered by arbitral immunity? Agreeably, while arbitrators need immunity so they can render an award, it is not clear the amount of immunity granted to AAA is legal. AAA does not render an award, nor do they act as arbitrators the vast majority of the time in any manner. Judges, lawyers and arbitrators have some repercussions for acting badly, yet there seem to be absolutely none for AAA, a corporation.*

As stated, arbitral immunity is not necessarily absolute although it appears that way for the AAA, but not arbitrators, lawyers or judges. For example, if a lawyer, judge or arbitrator falsely advertise his or her services, they are legally liable in the courts. If a lawyer, judge or arbitrator breach their duties, they are legally liable. If a lawyer defames a person intentionally, they are legally liable. If this plaintiff unintentionally broke the rules, she is liable. This is an outrage and the courts should see it as such.

The plaintiff also wishes to challenge the notion that arbitrators act as judges. In a sense they do – in a quasi-judicial capacity. An arbitrator under AAA is a contracted employee who serves for monetary reasons. However, they are able to make decisions that are unfair and unfounded with little to chance of appeal or reparation.

However, is erroneous to think that if a contracted employee (arbitrator) fails to produce on their contract and in fact is breaking the law, the arbitration agency is not somewhat culpable especially when they have full-knowledge of this (especially when considering the arbitration as a contractual arrangement).[16] This law-breaking by the respondent and the arbitrator were done with full knowledge

---

[16]See Page

of the AAA and should render AAA equally as responsible as the arbitrator. It was not hidden but brought up via numerous emails that both the AAA and the respondent had broken the law and their respective contracts.

While there is immunity in the choice of an arbitrator nothing says that if the AAA fails to recuse a biased and unethical arbitrator, they are immune. In essence, they have allowed law-breaking to occur under their watch, and have allowed a paid consultant to violate his or her contract.

Should AAA be granted immunity when this they are a party to illegal actions? Lawyers, judges and arbitrators are not, but a commercial corporation is under arbitration. For example, if a judge or lawyer is party to a breached contract, extreme bias and law breaking as well as the rules of the (court) contract, that judge is accountable to take some action or reparation. If not, that judge is liable for sanctions including disbarment. An arbitrator (lawyer) can also be disbarred, sanctioned and/or sued. But an arbitration agency (a corporation) has zero liability.

Arbitral immunity did not apply in the case where the State Attorney General of Minnesota broke the National Arbitration Forum veil and filed a class action for consumer fraud. She succeeded in overcoming arbitral immunity (In re Nat. Arbitration Forum Trade Practices Litigation, Civil No. 09-1939 (PAM/JSM) (D. Minn. Apr. 12, 2010). She was able to break the shell, and found horrible fraud and abuse.

Arbitration has done nothing except create a very unequal two-tier system of justice – one for the "haves" and unfair arbitration proceedings for the "have nots." It is a fairly well-known fact amongst lawyers in this state that they refuse to take arbitration cases, where for them, it is better than for a pro se plaintiff in an arbitration dispute simply because their case management teams appear far superior. The plaintiff had a lesser trained team that did not understand or uphold the basics of the contract or understand

the laws.

For all these reasons above, this plaintiff asks that the court to strongly consider the new filing of this case as it can show merit and claims under which arbitral immunity should be void. Arbitration associations should not be allowed immunity when they break the law before entering into an agreement or after arbitration contracts are null and void. That is unconstitutional in nature as it implies that AAA can enjoy immunity provided to no other citizen – including judges, arbitrators or lawyers. They cannot be sanctioned before a State Bar, disbarred, or sued. How can this be?

### RELIEF

This plaintiff is seeking relief for her additional costs of proceeding with this case, and relief for her emotional and mental distress, which has been significant. Her civil damages are set at more than $75,000.00 *or as the jury awards over that amount.*

*To the best of my knowledge, the above is absolutely true and accurate.*

Christina M. Vogt

PRO SE Plaintiff                                      Date   9/19/19

PO Box 76
Great Cacapon, WV
              25422

304-261-5783

**CERTIFICATION OF SERVICE**

**Registered Agent of Service**

CORPORATION SERVICE COMPANY

209 WEST WASHINGTON STREET

CHARLESTON, WV, 25302

American Arbitration Association Corporate Address:

120 Broadway, New York, NY 10271